# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 22-739V

```
* * * * * * * * * * * * *
BEATRICE CAIN,                        *
           Petitioner,               *        Chief Special Master Corcoran
                                     *
v.                                   *        April 22, 2026
                                     *
SECRETARY OF HEALTH                  *
AND HUMAN SERVICES,                  *
                                     *
           Respondent.               *
* * * * * * * * * * * * *
```

*Michael Adly Baseluos*, Baseluos Law Firm, PLLC, San Antonio, TX, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

## SUPPLEMENTAL RULING ON DAMAGES[1]

On July 5, 2022, Beatrice Cain filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza vaccine administered on September 1, 2021. Petition at 1. Entitlement was conceded in November 2023, and a ruling issued in Petitioner's favor while the matter was still pending in the "Special Processing Unit" (the "SPU"). Respondent's Rule 4(c) Report (ECF No. 48); Ruling on Entitlement (ECF No. 49).

Despite their efforts, the parties could not independently resolve damages, and the case was transferred out of SPU in March 2024 for resolution of damages by another special master. Order Reassigning Case, issued Mar. 5, 2024 (ECF No. 63). After both sides engaged in damages-

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet**. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

associated discovery (including life care planners), their dispute proceeded to briefing and a two-day damages hearing held in November 2025, after which the special master issued a ruling on damages on March 2, 2026. ECF No. 153 (the "Damages Ruling"). That ruling resolved pain and suffering as well as many individually-disputed care issues, but left some final issues for the parties to address. Damages Ruling at 16-17.

After the issuance of the Damages Ruling, the intervening retirement of the adjudicating special master resulted in the transfer of the matter back to me. Order Reassigning Case, issued Mar. 5, 2026 (ECF No. 154). The parties then filed a Joint Status Report setting forth their final positions on certain unresolved damages categories or life care plan-associated care expenses. *See generally* Joint Status Report, filed Apr. 1, 2026 (ECF No. 157) ("JSR").[3] Below I set forth my determinations on the final damages components to be resolved.

## I.    Remaining Damages Issues

The parties identified several damages components that they have been unable to resolve in the wake of the Damages Ruling (either because the Damages Ruling was silent as to specifics or "incomplete as to costs, frequency, and duration of damages" (JSR at 1)), and have also helpfully set forth their positions on each.

### A.    Physical Therapy & Diagnostics

Petitioner requests compensation for 32 sessions of physical therapy ("PT") annually until age 65 (subject to insurance deductibles and costs), along with quarterly PT re-evaluations and yearly ultrasound imaging of her affected shoulder over the same period. JSR at 1. Based on informal communication with the prior special master about this element of damages, Petitioner calculated the amount needed as a five-year annuity sufficient to cover $4,004.00 per year (adjusted for inflation). *Id.* at 2. Petitioner maintains Respondent never challenged the need for this future care cost, despite due opportunity and warning from the special master of that risk (and therefore waived the right to do so now), and that the Damages Ruling recognizes the ongoing nature of Petitioner's SIRVA. *Id.* at 3. Petitioner also requests an additional $696.40 per year (over the same five-year timeframe and adjusted for inflation) for quarterly PT re-evaluation appointments, and $297.61 per year (adjusted for inflation) for imaging/ultrasound diagnostics. *Id.*

Respondent disputes that PT sessions and related re-evaluations were awarded, and even if they should have been awarded, questions what their cost, frequency, and duration should be. *Id.* Respondent further maintains his life care planner did estimate an annual cost for these expenses,

---

[3] Petitioner also filed additional materials after the damages hearing and following the issuance of the Damages Ruling that were neither requested nor authorized, including a supplemental brief, filed April 21, 2026 (ECF No. 162), reiterating positions set forth in the JSR.

totaling $5,683.38 for a single year. *Id*. (citing Expert Report of Laura Fox, RN, dated Sep. 25, 2024, filed as Ex. C (ECF No. 90) at 2). And this sum would require insurance adjustment as well. *Id.* at 4.

      B.        <u>Plasma-Rich Platelet Injections ("PRP")</u>

Petitioner maintains that she is entitled to compensation for this non-traditional treatment,[4] which is not covered by her insurance. JSR at 4-5. She also notes that she would require pre-evaluations (which would be covered by her insurance) for the necessity of PRP injections before each administration, and while the Damages Ruling envisioned six injections annually for 10 years (thus implying frequency and duration of the pre-evaluations), it did not specify the cost of the associated pre-evaluations. *Id*. at 5-6; Damages Ruling at 15.

Petitioner now seeks damages for PRP pre-evaluations that vary over a ten-year period, contingent on whether PT is also awarded, as both are subject to her deductible and coinsurance. JSR at 5-6.[5] She also seeks clarification of the costs of the actual PRP treatments as reflected in the Damages Ruling. While Petitioner states that the special master had indicated a willingness to compensate six PRP injections each year for 10 years at a cost of $900 per injection, the Damages Ruling awarded a lesser sum ($600 per injection). Damages Ruling at 15.

Petitioner further relies on September 10, 2025 billing records for a $600.00 "outpatient procedure" (plus $66.00 in additional charges for an "outpatient procedure"), while acknowledging in her affidavit that her provider's billing has been "confusing and inconsistent," and that she "[has been charged] $500 for the PRP injection itself versus the $666 they claimed it would be." Ex. 93, filed Oct. 6, 2025 (ECF No. 140-5) at 6-7 (alteration in original); Ex. 90, Supplemental Affidavit, filed Oct. 6, 2025 (ECF No. 140-2) at 2. The Damages Ruling indicates that the "real costs of PRP injections" was in the range of $500 to $541.22, and hence $600 was a fair estimation. Damages Ruling at 15; *see generally* Ex. 54 (Explanation of Benefits), filed Jan. 29, 2024 (ECF No. 59-2) (reflecting $541.22 was incurred for services); Ex. 90 at 2)).[6] Petitioner proposes this amount "must be incorrect" in light of statements Petitioner attributes to the special master prior to issuance of the Damages Ruling. JSR at 4.

---

[4] PRP refers to a treatment involving the concentration of platelets from a patient's own blood, which is then injected into affected tissue to support healing and reduce inflammation, as described in the damages hearing testimony of Glenn Whitted, M.D. Tr 99:21-100:7, 102:7-16.

[5] If Petitioner were awarded costs for PT, the costs for PRP pre-evaluations would be $131.67 annually for Years 1 through 5, and $1,316.70 annually for Years 6 through 10. Alternatively, without an award for PT, the costs for PRP pre-evaluations would be $1,316.70 annually for Years 1 through 10. JSR at 6.

[6] *But see*, Pet'r Prehearing Brief, filed Oct. 8, 2025 (ECF No. 143) at 14 (stating that Petitioner's treating provider advertised a $666 per-injection rate, underscoring that cost estimates for PRP treatment vary and are not fixed).

Respondent notes that he objected to this damages component, and that the existing determination in the Damages Ruling should be adhered to otherwise. *Id*. at 5. Respondent allows, however, that it appears that pre-PRP evaluations were contemplated, and therefore a cost for them should be determined. *Id*. at 6.

C.      House Cleaning

Petitioner asks that a rate for the previously awarded biweekly housecleaning services be specified. JSR at 6-7. She proposes that a rate of $260.40 per biweekly cleaning is acceptable, yielding an annual total of $6,770.40. *Id*. at 7. Respondent contends that evidence generated in this matter relevant to this damages component reflected a cost of $150 per cleaning every ten days (corresponding to an approximate annual cost of $5,475.00). *Id*.

D.      Durable Medical Equipment ("DME")

Petitioner identifies several categories of DME expenses set forth in her life care plan and included in the Damages Ruling, but not specifically identified by dollar amount. JSR at 7-8. These include (a) an adjustable bed, (b) a TENS unit,[7] (c) TENS supplies, (d) grab bars, (e) a hair dryer stand, (f) a reusable ice pack, (g) a shower brush and sponge, (h) a grocery bag carrier, (i) a grocery shopping cart, (j) a rolling laundry cart, and (k) a reaching device to grasp household items. *Id*. Respondent contends that the Damages Ruling awarded many of these DME items, but not all (such as the ice pack and grocery carrier or cart); that some were specified as one-time awards rather than regularly-replaced items; and that the cost of all items should be clarified. *Id*. at 8-9.

E.      Final Calculation of Past Unreimbursed Expenses

Respondent challenges only one component of the total requested sum of $32,009.98: a charge of $896.20 for airfare incurred by Petitioner to attend an out-of-state medical examination by Dr. Whitted. JSR at 9. Respondent contends that this expense is more appropriately treated as a litigation cost, which may ultimately be recoverable through a motion for attorney's fees and costs. Petitioner, for her part, agrees that the $896.20 may be excluded from her request for past expenses if I agree it should be pursued through that route. *Id*.

## II.      Legal Standards

A petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which the

---

[7] *TENS* stands for transcutaneous electrical nerve stimulation, which delivers low-voltage currents at or near nerves to block or change the perception of pain. Cleveland Clinic, *Transcutaneous Electrical Nerve Stimulation (TENS)*, https://my.clevelandclinic.org/health/treatments/15840-transcutaneous-electrical-nerve-stimulation-tens (last visited Apr. 21, 2026).

petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(A)(i) –(iii). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22–23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). This provision of the Act also permits recovery of costs *to be incurred* for future care as well, although such costs must be shown to be "reasonably necessary." Section 15(a)(1)(A)(iii)(I) –(II).

Reasonableness is key to determining the magnitude of any damages component that is not partially subjective, in the manner pain and suffering is. But the meaning of the phrase "reasonably necessary" is somewhat imprecise, as I have recognized in other cases. *Barone v. Sec'y of Health & Human Servs.*, No. 11-707V, 2016 WL 3577540, at *5 (Fed. CL. Spec. Mstr. May 12, 2016). At a minimum, it encompasses the idea that additional care aimed at maximizing an injured party's overall well-being (no matter how personally deserving the individual may be) is *not* in keeping with the scope of damages envisioned by the Program. *See I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448135, at *6 (Fed. Cl. Spec. Mstr. Apr. 19, 2013) (quoting *Scheinfield v. Sec'y of Health & Human Servs.*, No. 90–212V, 1991 WL 94360, at *2 (Cl. Ct. Spec. Mstr. May 20, 1991) that "reasonably necessary" means "that which is required to meet the basic needs of the injured person . . . but short of that which may be required to optimize the injured person's quality of life"); *see also Bedell v. Sec'y of Health & Human Servs.*, No. 90-765V, 1992 WL 266285, at *4 (Cl. Ct. Spec. Mstr. Sept. 18, 1992) (defining the term to mean "more than merely barely adequate, but less than the most optimal imaginable"). And it goes almost without saying that such costs must *also* pertain to care associated with the alleged injury or its sequalae. Medical care a petitioner might receive, even if needed, that is not aimed at treatment of the vaccine injury at issue, or related to it, is not a reasonably necessary damages component. And the Program's status as the "payor of last result" is also important to keep in mind; care that will be adequately covered by insurance is not to be reimbursed.

### Analysis

I adhere to and incorporate by reference the factual determinations set forth both in the 2023 Ruling on Entitlement as well as the more recent Damages Ruling. To the extent any category of damages was previously addressed as properly awarded in that ruling, I will follow its dictates.[8]

A.    Physical Therapy

---

[8] I do note, however, the unusual magnitude of damages awarded in this case, as well as the extensive number of modalities and treatment considerations the award reflects. I can envision few SIRVAs where this degree of damages would be appropriate, and my determinations herein are far from an endorsement that they should be awarded generally.

The Damages Ruling expressly denied future PT, determining it unnecessary. The special master observed that Petitioner had not engaged in supervised physical therapy since 2022, transitioning instead to a self-directed home exercise program ("HEP"). Damages Ruling at 15-16; *see also* Transcript ("Tr.") 309:13-23 (ECF Nos. 151-52).[9] Witness testimony from the damages hearing indicated that PT was not necessarily something that could be predicted as necessary (let alone pursued at the levels proposed). Tr. at 274:23-275:4, 308:16-24, and 309:2-4. Thus, even if the Petitioner's damages experts *argued* for future PT, the prior special master's denial of PT-related costs makes clear that Petitioner did not carry her burden to establish that such care was reasonably necessary. And even if (as Petitioner contends) in prior status conferences the special master suggested the propriety of this element, it is the final determination, which the Damages Ruling embodies, that controls the outcome.

Petitioner suggests that Respondent, by not filing a responsive supplemental LCP, has waived the ability to challenge specific components of her proposed future care. But Respondent did file a LCP, submitted additional filings from his planner, and participated fully in the damages proceedings. And although a prior order may have put Respondent on notice that failing to directly rebut updated cost evidence could weaken his position, this did not amount to a determination that this component of damages was acceptable.

Accordingly, Petitioner has not established entitlement to future PT sessions or re-evaluations, and this damages element shall not be included in the final damages decision.

### B.     Diagnostic Imaging

Petitioner's LCP included yearly musculoskeletal ultrasounds based on the recommendation of her planner, with the associated costs anticipated to fall within her private insurance deductible. JSR at 3, Tr. at 119:1-120:5. Petitioner also represents that, during a prior status conference, the special master had indicated approval of such diagnostics. JSR at 3.

The Damages Ruling does not, however, include provision for this cost – and that is because it appears it was not established as medically necessary. At the damages hearing, one of Petitioner's medical experts recommended annual ultrasound imaging "to keep an eye on" potential deterioration of the shoulder's soft tissue structures over time. Tr. at 120:3-5. Respondent's expert disagreed, explaining that imaging is not typically performed on a predetermined annual basis, but rather in response to clinical indications or diagnostic need. *Id*. at 441:13-20. He further noted that routine, pre-scheduled imaging is not standard practice for managing a vaccine-related injury or to treat any injury otherwise unrelated. *Id*. The Damages

---

[9] This observation is supported by Petitioner's own submissions. In her affidavit, Petitioner emphasized that she relies on home-based PT tools to "manage [her] injury on a day-to-day basis," describing the equipment as "essential for maintaining [her] remaining mobility and function." Ex. 90 at 4-5. She further explains that these tools allow her to "preserve range of motion, manage pain, and prevent further deterioration." *Id*. at 5.

Ruling reflects a determination that this cost was not proved to be reasonably necessary, and therefore it is appropriately denied.

C.    PRP Costs

In contrast to the foregoing expenses, the Damages Ruling clearly contemplated an award for future PRP injections, in addition to pre-evaluations, albeit in a sum lower than Petitioner requests. Specifically, Petitioner was awarded six PRP injections annually for 10 years at a rate of $600.00 per injection for a total of $36,000.00. Damages Ruling at 15. The Ruling did not, however, specify cost, frequency, or duration of the associated re-evaluations.

Regarding injection costs, the Damages Ruling, rather than any prior statement, governs. The sum awarded appears grounded in the record and tempered by the absence of clear evidence supporting long-term necessity of the therapy in this case or of references generally establishing PRP's safety and efficacy in treating SIRVA, particularly over an extended period. In these respects, the determination fell within the special master's discretion to assess projected unreimbursed expenses, and does not reflect error (even if Petitioner *believes* she substantiated a higher sum). The record on the whole reflects that she has established care at a cost of approximately $600.00 per treatment.[10]

Petitioner has, however, established cause for supplementing the Damages Ruling to account for the cost of pre-PRP injection pre-evaluations. The record reflects that Petitioner must be pre-evaluated before every injection. Although Respondent challenged PRP therapy more broadly, he did not dispute that such evaluations would be required if the injections themselves were compensable. Moreover, Respondent acknowledged that the Damages Ruling contemplated their inclusion in connection with PRP treatment. JSR at 6. Petitioner's updated LCP sets the rate of $219.45 per pre-evaluation. Ex. 92, Supplemental Expert Report by Misty Coffman, RN, filed Oct. 6, 2025 (ECF No. 140-4) at 9. As Petitioner has been awarded for six injections annually for 10 years, I correspondingly award an additional $13,167.00 (representing the cost of six pre-evaluations annually over the same period, to be adjusted for inflation).

D.    House Cleaning

The Damages Ruling awarded Petitioner biweekly housecleaning services for life.[11] Damages Ruling at 16. That determination was largely based on evidence that Petitioner has difficulty performing household tasks, such as sweeping, vacuuming, and cleaning her bathtub,

---

[10] Notably, at the damages hearing, $600.00 was identified as the working estimate, and Petitioner's counsel agreed: "Correct. Estimated." Tr. at 420:19-22. In light of Petitioner's acknowledged variability in pricing, this exchange represents the most contemporaneous cost evidence at the time of the ruling, and it is generally consistent with the billing records and with Petitioner's testimony.

[11] Petitioner's life expectancy is an estimated 45 additional years; this number was obtained from the Social Security Administration's website, at https://www.ssa.gov/OACT/population/longevity.html (last visited on April 21, 2026).

using only her unaffected arm. *See e.g.*, Tr. 337:21-339:7. Petitioner similarly represented that her injury has made it "impossible to manage housekeeping independently," necessitating the hiring of a housekeeper to perform "essential work that [she] simply cannot do." Ex. 90 at 2.

The Damages Ruling did not, however, specify the cost per cleaning session. Respondent now seeks clarification, pointing to Petitioner's billing records reflecting a rate of $150.00 per cleaning every ten days. Petitioner acknowledges that she currently pays that amount, but argues that this figure is at the low end of possible rates and may not reflect true, long-term costs. JSR at 6. She also notes that her planner estimated a range of $150.00 to $370.80 per session, and that she "would be willing to accept a mid-point of $260.40." *Id*. at 6-7; *see also*, Ex. 92 at 11.

I do not alter the frequency or duration of the prior award as to this expense. And with respect to actual cost, the most reliable evidence in the record is Petitioner's incurred expense of $150.00 per session, albeit at a higher frequency than that awarded. This figure falls within the range identified by her life care planner and is supported by her own billing records. That figure will not be adjusted, resulting in a yearly total of $3,900.[12]

### E.    DME Costs

The Damages Ruling awarded Petitioner an adjustable bed and mattress, to be replaced once after 10 years; grab bars and a hair dryer stand as one-time items; a TENS unit with a replacement every 5 years for 10 years; and TENS unit supplies for the same time period. Those costs are permitted, clarified as follows:

> - $2,397.50 for an adjustable bed in Year 1, and $2,397.50 for a replacement in Year 10 (Ex. 92 at 12);
>
> - $81.50 for grab bars as a one-time expense (*Id*. at 11);
>
> - $27.98 for a hair dryer stand as a one-time expense (*Id*. at 12);
>
> - $55.99 for a TENS unit in Year 1, with replacement costs of $55.99 in Year 5 and $55.99 in Year 10 (*Id*. at 11); and
>
> - $19.98 annually for TENS unit supplies over 10 years, totaling $199.80 (*Id*.).

No additional DME costs are awarded.

### F.    Final Calculation of Past Unreimbursed Medical Expenses

---

[12] Biweekly cleaning corresponds to 26 sessions annually; at $150 per session, the annual cost is $3,900. Provided that the remaining life expectancy is approximately 45 years, this equates to an estimated lifetime cost of $175,500.

Petitioner is entitled to reimbursement of past unreimbursed expenses in the amount of $31,113.68. This sum reflects the requested total of $32,009.88, less the $896.20 airfare charge. That sum is litigation-oriented and is better addressed as part of an attorney's fees and costs request.

G.    Damages Clarification Summary

This table reflects the calculations set forth above:

| Category | Cost | Frequency | Duration | Total |
|---|---|---|---|---|
| Pain & Suffering | $250,000.00 | One-time | | $250,000.00 |
| Home Modifications | $22,249.44 | One-time | | $22,249.44 |
| Past Expenses | $31,113.68 | One-time | | $31,113.68 |
| PRP Injections | $600.00 per injection | 6/year | 10 years | $36,000.00 |
| PRP Evaluations | $219.45 per evaluation | 6/year | 10 years | $13,167.00 |
| Housecleaning Services | $150.00 per session | Biweekly (26/year) | Life (45 years) | $175,500.00 |
| DME (bed) | $2,397.50 | 2/10yrs (Years 1 & 10) | 10 years | $4,795.00 |
| DME (grab bars) | $81.50 | One-time | | $81.50 |
| DME (hair dryer stand) | $27.98 | One-time | | $27.98 |
| DME (TENS unit) | $55.99 | 3/10yrs (Years 1, 5, & 10) | 10 years | $167.97 |
| DME (TENS unit supplies) | $19.98 | Annual | 10 years | $199.80 |

**Conclusion**

Petitioner is entitled to compensation consistent with the Damages Ruling and this Supplemental Ruling. The awarded amounts, including both lump-sum and future costs are

9

summarized in the table above. The pending Motion for Interim Damages (ECF No. 159) is DENIED.[13]

On or before **May 22, 2026**, the parties shall file a stipulation setting forth the proposed mechanism for payment of these sums, or may, by that date, contact my law clerk June Riley at june_riley@cfc.uscourts.gov, setting forth the language they wish to have included in a Damages Decision in this matter so that I can issue such a decision immediately thereafter.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[13] Petitioner recently filed a motion for interim damages, largely reiterating her positions set forth in the JSR, seeking prompt payment of damages components that do not require clarification and/or that she characterizes as "straight forward rewards." Motion for Interim Damages, dated April 5, 2026 (ECF No. 159) at 8. But this case does not present the circumstances in which an ongoing damages dispute means that a final judgment is likely to be delayed, such that a more immediate partial award would be justified. Rather, it is likely a judgment will issue before the end of May.

10